IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIFFANY MCDOUGALL, individually and on behalf of all others similarly situated, | Civil Action No:  1:23-cv-00168-LGS |
| Plaintiff, | Hon. Lorna G. Schofield |
| v. | |
| SAMSUNG ELECTRONICS AMERICA, INC. | |
| Defendant. | |

**DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS THE MATTER**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF FACTS ................................................................................... 2

    A.      The Arbitration Agreement ..................................................................... 3

        1.      SEA provided conspicuous notice of the Arbitration Agreement everywhere a user might be expected to look, including the outside of the Galaxy S21 box ................................................................... 3

        2.      Inside the Galaxy S21 box, SEA provides a short pamphlet, again notifying users of the Terms and Conditions and Arbitration Agreement .......................................................................................... 5

        3.      During the on-screen device set-up process, SEA again notified Plaintiff of the Terms and Conditions and required Plaintiff to affirmatively acknowledge them ........................................................ 7

        4.      The Arbitration Agreement informed Plaintiff of the simple opt-out procedure ............................................................................................. 9

    B.      The Scope of the Arbitration Agreement ................................................ 9

III.    LEGAL STANDARD ....................................................................................... 11

IV.     ARGUMENT .................................................................................................... 12

    A.      Plaintiff Entered Into An Enforceable Arbitration Agreement with SEA............ 12

        1.      Agreement formation requires only reasonable notice and assent .......... 12

        2.      This Court can enforce the Arbitration Agreement based on three independent grounds .......................................................................... 13

    B.      Arbitrability .......................................................................................... 22

    C.      The Arbitration Agreement's Breadth.................................................... 23

    D.      Dismissal .............................................................................................. 24

V.      CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co.*,
  307 F.3d 24 (2d Cir. 2002) ................................................................................. 11, 24

*Alford v. Dean Witter Reynolds, Inc.*,
  975 F.2d 1161 (5th Cir. 1992) .................................................................................. 25

*Aminoff & Co. LLC v. Parcel Pro, Inc.*,
  2022 WL 987665 (S.D.N.Y. Apr. 1, 2022) ............................................................ 14, 20

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) .................................................................................................. 11

*Bar-Ayal v. Time Warner Cable Inc.*,
  2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006) ............................................................ 20

*Bassett v. Elec. Arts Inc.*,
  2015 WL 1298644 (E.D.N.Y. Feb. 9, 2015) .............................................................. 15

*Begonja v. Vornado Realty Tr.*,
  159 F. Supp. 3d 402 (S.D.N.Y. 2016) ........................................................................ 23

*Berkson v. Gogo LLC*,
  97 F. Supp. 3d 359 (E.D.N.Y. 2015) .......................................................................... 13

*Beture v. Samsung Elecs. Am., Inc.*,
  2018 WL 4621586 (D.N.J. July 18, 2018) .......................................................... 14, 20, 22

*Brower v. Gateway 2000, Inc.*,
  676 N.Y.S. 2d 569 (App. Div. 1998) ...................................................................... 18, 25

*Centrifugal Force, Inc. v. Softnet Commc'n, Inc.*,
  2011 WL 744732 (S.D.N.Y. Mar. 1, 2011) .................................................................. 3

*Cimillo v. Experian Info. Sols., Inc.*,
  2023 WL 2473403 (S.D.N.Y. Mar. 13, 2023) ............................................................ 19

*Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*,
  58 F.3d 16 (2d Cir. 1995) ......................................................................................... 24

*Contec Corp. v. Remote Sol., Co.*,
  398 F.3d 205 (2d Cir. 2005) ...................................................................................... 23

*Cupples v. Valic Fin. Advisors, Inc.*,
  2014 WL 4662272 (E.D.N.Y. Sept. 18, 2014) ............................................................ 25

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Davidson & Assocs. v. Internet Gateway*,
    334 F. Supp. 2d 1164 (E.D. Mo. 2004) ........................................................................17

*Dye v. Tamko Bldg. Prods.*,
    908 F.3d 675 (11th Cir. 2018) .....................................................................................15

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995) ............................................................................................. 12, 22

*Glover v. Bob's Disc. Furniture, LLC*,
    2022 WL 3353454 (S.D.N.Y. Aug. 12, 2022) ..................................................... 13, 14

*HealthPlanCRM, LLC v. AvMed, Inc.*,
    458 F. Supp. 3d 308 (W.D. Pa. 2020) ........................................................................17

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
    672 F.3d 113 (2d Cir. 2011) .......................................................................................11

*In re Samsung Galaxy Smartphone Litig.*,
    298 F. Supp. 3d 1285 (N.D. Cal. 2018) .............................................................. 17, 19

*In re Wyze Data Incident Litig.*,
    2020 WL 6202724 (W.D. Wash. Oct. 22, 2020) ........................................................17

*Jackson v. Butler*,
    2009 WL 2244588 (E.D. Mich. July 27, 2009) ........................................................25

*James v. Glob. Tel.Link Corp.*,
    852 F.3d 262 (3d Cir. 2017) .......................................................................................17

*Johnson v. Orkin, LLC*,
    556 F. App'x 543 (7th Cir. 2014) ...............................................................................25

*Johnston v. Beazer Homes Texas, L.P.*,
    2007 WL 708555 (N.D. Cal. Mar. 2, 2007) ...............................................................25

*McNamara v. Samsung Telecomms. Am., LLC*,
    2014 WL 5543955 (N.D. Ill. Nov. 3, 2014) ........................................................ 14, 18, 19

*Meyer v. Uber Techs, Inc.*,
    868 F.3d 66 (2d Cir. 2017) ................................................................................. passim

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ....................................................................................................25

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Moore v. Microsoft Corp.*,
   741 N.Y.S. 2d 91 (App. Div. 2002) ..........................................................................20

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
   460 U.S. 1 (1983) ...........................................................................................................24

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016) ................................................................................. 11, 12

*Noble v. Samsung Elecs. Am., Inc.*,
   682 F. App'x 113 (3d Cir. 2017) ..................................................................................15

*Norcia v. Samsung Telcoms. Am., LLC*,
   845 F.3d 1279 (9th Cir. 2017) ............................................................................. 16, 17

*PaineWebber Inc. v. Bybyk*,
   81 F.3d 1193 (2d Cir. 1996) ................................................................................. 12, 23

*ProCD, Inc. v. Zeidenberg*,
   86 F.3d 1447 (7th Cir. 1996) ........................................................................................17

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora*,
   991 F.2d 42 (2d Cir. 1993) ...........................................................................................12

*Register.com, Inc. v. Verio, Inc.*,
   356 F.3d 393 (2d Cir. 2004) .......................................................................... 12, 14, 15

*Roby v. Corporation of Lloyd's*,
   996 F.2d 1353 (2d Cir. 1993) .......................................................................................25

*Rubin v. Sona Int'l Corp.*,
   457 F. Supp. 2d 191 (S.D.N.Y. 2006) ........................................................................25

*Schmidt v. Samsung Elecs. Am., Inc.*,
   2017 WL 2289035 (W.D. Wash. May 25, 2017) ................................................. 14, 19

*Schnabel v. Trilegiant Corp.*,
   697 F.3d 110 (2d Cir. 2012) ................................................................................ passim

*Shepherd v. Annucci*,
   921 F.3d 89 (2d Cir. 2019) .............................................................................................2

*Soucy v. Cap. Mgmt. Servs., L.P.*,
   2015 WL 404632 (N.D. Ill. Jan. 29, 2015) ................................................................25

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Starke v. Gilt Groupe, Inc.*,
  2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014)........................................................................20

*Starke v. SquareTrade, Inc.*,
  913 F.3d 279 (2d Cir. 2019)..................................................................................... 13, 20

*Trafalgar Shipping Co. v. Int'l Mill. Co.*,
  401 F.2d 568 (2d Cir. 1968).............................................................................................2

*Vasadi v. Samsung Elecs. Am. Inc.*,
  2021 WL 5578736 (D.N.J. Nov. 29, 2021)...................................................................... passim

*Velasquez-Reyes v. Samsung Elecs. Am., Inc.*,
  2020 U.S. WL 6528422 (C.D. Cal. Oct. 20, 2020).......................................................... passim

*Volt Info. Scis., Inc. v. Bd. of Trustees*,
  489 U.S. 468 (1989)........................................................................................................11

*Weiss v. Macy's Retail Holdings, Inc.*,
  741 F. App'x 24 (2d Cir. 2018) .....................................................................................12

*Whitt v. Prosper Funding LLC*,
  2015 WL 4254062 (S.D.N.Y. July 14, 2015) ..................................................................3

*Zachman v. Hudson Valley Fed. Credit Union*,
  49 F.4th 95 (2d Cir. 2022)...............................................................................................13

**Statutes**

9 U.S.C. § 2 .........................................................................................................................11

9 U.S.C. § 4 .........................................................................................................................11

**Other Authorities**

Restatement (Second) of Contracts § 19(2).......................................................................12

**Rules**

AAA Rule R-7(a) ................................................................................................................23

v

Defendant Samsung Electronics America, Inc. ("SEA") moves this Court, under the Federal Arbitration Act (9 U.S.C. §§ 1-14) and Federal Rule of Civil Procedure 12(b)(3), for an order compelling arbitration and dismissing the case.

## I.    <u>INTRODUCTION</u>

In this putative class action, Plaintiff Tiffany McDougall claims SEA made "false and misleading" representations about the storage capacity of the Samsung Galaxy S21 Ultra 5G smartphone ("Galaxy S21"), because the device's preloaded operating system and other content consumed some of its storage space. This theory suffers from numerous fatal defects. But under the Galaxy S21's Terms and Conditions, all Plaintiff's claims must be resolved through arbitration. Plaintiff was informed in multiple conspicuous ways that using and retaining the device constituted acceptance of an agreement to arbitrate any claims that might arise ("Arbitration Agreement"): (i) in bold font on the Galaxy S21's exterior package; (ii) in a short "Terms and Conditions" pamphlet included inside the box; (iii) on-screen during the device's set-up process; (iv) in the preloaded "Settings" on the device itself; and (v) on SEA's website. Indeed, as part of the device's "clickwrap" set-up process—which must be completed ***before*** the device can be used—Plaintiff was presented with, and affirmatively accepted, the device's Terms and Conditions. Those Terms and Conditions require that Plaintiff's claims "be resolved through binding individual arbitration." And while Plaintiff was repeatedly informed that she could opt out of the Arbitration Agreement within 30 days of purchase, she elected not to do so. By using and retaining the Galaxy S21, and failing to opt out, Plaintiff manifested her assent to the Arbitration Agreement.

Although the Arbitration Agreement clearly and unmistakably delegates to the arbitrator the issue whether it encompasses Plaintiff's claims, should the Court reach the issue here, those

1

claims fall neatly within the Arbitration Agreement's scope. She must therefore arbitrate the claims she advances in this case. Courts within the Second Circuit routinely compel arbitration involving less decisive assent and less extensive notice of the contract's terms. And courts around the nation have enforced virtually identical agreements between SEA and its product-users, and thus compelled the parties to arbitrate their disputes. This Court should do the same.

## II.    STATEMENT OF FACTS

Plaintiff alleges that she was "misle[d]" into buying her Galaxy S21 because some of the phone's 128 GB of storage space is occupied by its operating system and preinstalled applications, leaving 101.4 GB of "Available Memory" for her to store "videos, photos, applications and music." Compl. ¶¶ 1-4, 7, 11, 29. She therefore asserts claims on behalf of two putative multi-state classes for breach of contract, negligence, fraud, unjust enrichment, and violations of various state consumer-protection statutes. *Id.* ¶¶ 31-75. These claims fail on the merits for a host of reasons.[1] This Court need not consider them, however, because this case does not belong in court at all. It belongs in arbitration.

Pursuant to Rule III.A.3 of this Court's Individual Rules and Procedures for Civil Cases, SEA informed counsel for Plaintiff that this case is subject to arbitration; Plaintiff's counsel chose not to respond.[2]

---

[1] The chief reason is there is nothing false about SEA's statements that the Galaxy S21 carries "128 gigabytes," as Plaintiff concedes. Compl. ¶¶ 1-2 (noting the device, in fact, has "128GB" in "Internal Memory"). Further, as the Complaint likewise concedes, SEA openly disclosed that a "[p]ortion" of the Galaxy S21's "memory" was "occupied by existing content." *Id.* ¶ 3.

[2] Decl. of Hannah Chanoine ISO Mot. to Compel Arb. ¶¶ 2-3; Exhs. F, G. The Court can consider affidavits on both motions to compel arbitration and motions to dismiss for improper venue. *See Trafalgar Shipping Co. v. Int'l Mill. Co.*, 401 F.2d 568, 570 (2d Cir. 1968) (considering affidavits in action to compel arbitration); *Shepherd v. Annucci*, 921 F.3d 89, 95 (2d Cir. 2019) (parties can "submit affidavits to demonstrate lack of venue" under Rule 12(b)(3)).

A.        **The Arbitration Agreement**

Plaintiff purchased her Galaxy S21 in Wilmington, Delaware, in or around September 2021.  Compl. ¶ 25.  SEA prominently informed her at every stage of the unboxing process of both the existence of the Arbitration Agreement and the opt-out method, before she gave her affirmative assent to the terms of the Arbitration Agreement.  Specifically, Plaintiff received the notice, first, on the Galaxy S21's packaging, second, in a "Terms and Conditions" pamphlet inside the box, and third, during the "clickwrap"[3] set-up process.[4]  Plaintiff accepted the Arbitration Agreement when she unboxed the device, used the device, and then retained the device, all with notice that doing so constituted acceptance.  Cantwell Decl. ¶¶ 6-9, 11, 20-21.  Plaintiff separately accepted the Arbitration Agreement by completing the Galaxy S21's set-up process, which required such acceptance as a condition of the device's use and retention.  *Id.* ¶¶ 13-17, 20-21.  Plaintiff thus assented to, and is bound by, the Arbitration Agreement in at least ***three*** independent ways.

1.        **SEA provided conspicuous notice of the Arbitration Agreement everywhere a user might be expected to look, including the outside of the Galaxy S21 box**.  Galaxy S21 smartphones sold in the United States are packaged in a box with external labeling providing information about the device.  Cantwell Decl. ¶¶ 7-8; Exh. A.  At the top of the label, SEA informs consumers in bold font that the "**Packaging Contains . . . Terms and Conditions**."  Cantwell Decl. ¶ 8; Exh. A.  Below that, SEA notifies users in bold font that using or retaining the device constitutes acceptance of the Terms and Conditions, including an Arbitration Agreement:

**IMPORTANT INFORMATION**

---

[3] *See Meyer v. Uber Techs, Inc.*, 868 F.3d 66, 75-76 (2d Cir. 2017) ("clickwrap," or "click-through," agreements are routinely enforced); *Whitt v. Prosper Funding LLC*, 2015 WL 4254062, at *4 (S.D.N.Y. July 14, 2015) ("In New York, clickwrap agreements are valid and enforceable contracts.") (quoting *Centrifugal Force, Inc. v. Softnet Commc'n, Inc.*, 2011 WL 744732, at *7 (S.D.N.Y. Mar. 1, 2011)).

[4] *See* Decl. of Nicole Cantwell ISO Mot. to Compel Arb. ("Cantwell Decl.") ¶¶ 7-17, 21-22.

3

**If you use or retain the device, you accept Samsung's Terms and Conditions, including an Arbitration Agreement. Full terms, warranty and opt-out information are at www.samsung.com/us/Legal/Phone-HSGuide/, the enclosed materials & device settings.**

An image of an AT&T-specific Galaxy S21 package is shown below.



Cantwell Decl. ¶ 8; Exh. A.

The URL listed on the box for Galaxy S21 smartphones leads directly to the full Arbitration Agreement on SEA's website.  Cantwell Decl. ¶¶ 8, 19.  In the version available between March 22, 2021 and January 25, 2022, the website was titled "**Terms and Conditions**" and began by informing consumers:

**This Product is subject to a binding arbitration agreement between you and SAMSUNG ELECTRONICS AMERICA, INC. ("Samsung").  You can opt out of the agreement within 30 calendar days of the first consumer purchase (or use of application) by emailing optout@sea.samsung.com or calling 1-800-**

**SAMSUNG (726-7864) and providing the applicable information. For complete terms and conditions that bind you and Samsung, refer to the "Arbitration Agreement" section of this document**.

*Id.* ¶¶ 19-20, 23; Exh. E.  It then listed four sections, the first of which was the "Arbitration Agreement."  Cantwell Decl. ¶¶ 19-20; Exh. E.  When users clicked "Arbitration Agreement," they were taken straight to its full terms.  *Id.*  The webpage also informed users that they could find more information in "the printed Terms & Conditions included with [their] device," on the SEA website, or "on the[ir] device, in the Samsung legal section of Settings."  *Id.*

The first lines of the Arbitration Agreement notify users that it "is a binding legal agreement . . . between you . . . and Samsung Electronics America, Inc."  Cantwell Decl. ¶¶ 20-21; Exh. E.  The Arbitration Agreement then states that "[e]lectronic acceptance of the agreement, opening the product packaging, use of the product, or continued possession of the product, constitutes acceptance of this agreement . . . ."  *Id.*  An image of the beginning portion of the scrollable copy of the Arbitration Agreement on SEA's website is shown below:

This is a binding legal agreement ("Agreement") between you (either an individual or entity) and Samsung Electronics America, Inc. ("Samsung"). Electronic acceptance of the agreement, opening the product packaging, use of the product, or continued possession of the product, constitutes acceptance of this agreement, regardless of whether you are the original purchaser, user, or other recipient of the product.

You and Samsung each agree that all disputes between you and Samsung that in any way relate to, or arise from, the standard limited warranty; or the sale, condition, or performance of the product, shall be resolved exclusively through final and binding arbitration, and not by a court or jury. Any such dispute shall not be combined or consolidated with a dispute involving any other person's or entity's product or claim. Specifically, without limitation of the foregoing, you shall not under any circumstances proceed as part of a class action. The arbitration shall be conducted before a single arbitrator, whose award may not exceed, in form or amount, the relief allowed by the applicable law.

*Id.*

**2.     Inside the Galaxy S21 box, SEA provides a short pamphlet, again notifying users of the Terms and Conditions and Arbitration Agreement**.  The box for the Galaxy S21

contains a sixteen-page[5] pamphlet titled "**Terms and Conditions**."  Cantwell Decl. ¶¶ 9-11; Exh.

B.  Directly beneath that title, the pamphlet instructed users in bold print as follows:



Cantwell Decl. ¶¶ 9-11;  Exh. B.   The top of the first page of the pamphlet after the cover page

specifically informs users in bold text of the Arbitration Agreement and their ability to opt out:



Cantwell Decl. ¶¶ 9-11; Exh. B.

---

[5] The first eight pages of the pamphlet state the Terms and Conditions in English; the following eight pages state them in Spanish.  *See* Cantwell Decl., Exh. B.

**3.     During the on-screen device set-up process, SEA again notified Plaintiff of the Terms and Conditions and required Plaintiff to affirmatively acknowledge them**. Before Plaintiff could use her Galaxy S21, she was required to complete an onscreen interactive set-up process on her phone. Cantwell Decl. ¶ 13. Plaintiff could not complete the set-up process and start using her phone until she affirmatively acknowledged the Terms and Conditions, which included the Arbitration Agreement. *Id.* ¶¶ 13-14, 17.

SEA presented the set-up process through a series of interactive screens on Plaintiff's Galaxy S21 smartphone. *Id.* ¶¶ 15-16. After Plaintiff initiated the set-up process, the second screen (directly following a "Welcome!" screen), was titled "**A few legal items to review**" and included "Terms and conditions" as the very first item. *Id.* ¶ 15; Exh. C. Plaintiff was unable to move to the next screen, complete the set-up process, and activate her phone until she affirmatively clicked the bubble next to "Terms and conditions" or clicked the bubble next to "I have read and agree to all of the above." Cantwell Decl. ¶¶ 15, 17. The below screenshot shows an example of how this screen appears when the user has clicked on the "Terms and conditions" and "Privacy Policy" bubbles:



*Id.* ¶ 15; Exh. C.

To view the Terms and Conditions in full, Plaintiff needed only click a bolded hyperlink labeled "**Details**," which would have taken her to a screen with a scrollable version of the Terms and Conditions, beginning with the Arbitration Agreement:

8



Cantwell Decl. ¶ 16; Exh. D.

    **4.**    **The Arbitration Agreement informed Plaintiff of the simple opt-out procedure.**  The Arbitration Agreement contains an opt-out provision, allowing users to opt out of arbitration without penalty:

> **You can opt out of the agreement within 30 calendar days of the first consumer purchase (or use of application) by emailing optout@sea.samsung.com or calling 1-800-SAMSUNG (726-7864) and providing the applicable information.**

Cantwell Decl. ¶¶ 20, 23; Exh. E.

    **B.**    <u>**The Scope of the Arbitration Agreement**</u>

    **The terms of the Arbitration Agreement require arbitration of all disputes between the parties.**  The scope of the Arbitration Agreement is broad, requiring arbitration of all disputes

in any way relating to or arising from the standard limited warranty or the sale, condition, or performance of the Galaxy S21:

> **You and Samsung each agree that all disputes between you and Samsung that in any way relate to, or arise from, the standard limited warranty; or the sale, condition, or performance of the product, shall be resolved exclusively through final and binding arbitration, and not by a court or jury.**[6]

Cantwell Decl. ¶¶ 20, 22; Exh. E. The Arbitration Agreement also identifies the rules applicable to such arbitrations and where they can be found:

> **The arbitration shall be conducted according to the American Arbitration Association (AAA) Commercial Arbitration Rules applicable to consumer disputes. The AAA Rules are available online at adr.org or by calling the AAA at adr.org or by calling 1-800-778-7879. This Agreement is entered into pursuant to the Federal Arbitration Act.**

Cantwell Decl. ¶¶ 20, 24; Exh. E. In addition, the Arbitration Agreement provides that "[t]he arbitrator shall decide all issues of interpretation and application of this Agreement." *Id.*

\*   \*   \*

By alleging that she used her Galaxy S21 (*see, e.g.*, Compl. ¶ 48), Plaintiff necessarily admits that the set-up process was completed and that as a consequence she accepted the Arbitration Agreement. It also means she was presented with the Arbitration Agreement—and provided notice that using or retaining the device and failing to opt out amounted to acceptance—everywhere a reasonable consumer could be expected to look: (i) when opening the box after the packaging informed her that using or retaining the Galaxy S21 amounted to acceptance; (ii) when using and retaining the device after the in-box Terms and Conditions told her that doing so amounted to acceptance; and (iii) when expressly accepting those same Terms and Conditions,

---

[6] As discussed below, this Court has no occasion to consider whether the Arbitration Agreement encompasses Plaintiff's claims; but should it reach the issue nonetheless, her claims fall fully within the Arbitration Agreement's scope. *Infra* at 22-24.

including the Arbitration Agreement, during the device's clickwrap set-up process.  Cantwell Decl.

¶¶ 7-11, 13-17.  And despite being repeatedly informed of her right to opt out, and provided with

straightforward instructions on how to exercise that right, Plaintiff declined to do so.  *Id.* ¶¶ 8, 10,

23-26; Exhs. A, B, E.  She is thus bound to arbitrate her dispute with SEA.

## III.   <u>LEGAL STANDARD</u>

The Federal Arbitration Act (the "FAA") provides that agreements to arbitrate a claim

"shall be valid, irrevocable, and enforceable," barring grounds for revocation.  9 U.S.C. § 2.  This

provision reflects "both a liberal federal policy favoring arbitration" and "the fundamental

principle that arbitration is a matter of contract."  *AT&T Mobility LLC v. Concepcion*, 563 U.S.

333, 339 (2011) (internal quotations omitted).  To advance these policies, the FAA authorizes

district courts to compel arbitration.  9 U.S.C. § 4.

"In deciding whether claims are subject to arbitration," courts in the Second Circuit

generally consider "(1) whether the parties have entered into a valid agreement to arbitrate,[7] and,

if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement."  *In re*

*Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011).  And where both elements

are met, the Court must compel arbitration according to the agreement's terms.  *ACE Cap. Re*

*Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 35-36 (2d Cir. 2002); *see Volt Info. Scis.,*

*Inc. v. Bd. of Trustees*, 489 U.S. 468, 478 (1989) (FAA "requires courts to enforce privately

negotiated agreements to arbitrate, like other contracts, in accordance with their terms").  But to

the extent an arbitration agreement "clea[rly] and unmistakabl[y]" submits the "arbitrability

question itself" to the arbitrator, the Court stops at the first step, and ***the arbitrator*** decides whether

---

[7] Arbitrability is governed by state-law principles of contract formation, *Nicosia v. Amazon.com, Inc.*, 834
F.3d 220, 231 (2d Cir. 2016), and here, New York law controls.  Cantwell Decl., Exh. E, at 2.

a particular dispute falls within the agreement's scope. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943-45 (1995); *accord PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198-99 (2d Cir. 1996). The existence of a valid agreement to arbitrate need only be shown by a preponderance of the evidence. *Progressive Cas. Ins. Co. v. C.A. Reaseguradora*, 991 F.2d 42, 46 (2d Cir. 1993).

IV. <u>**ARGUMENT**</u>

A. <u>**Plaintiff Entered Into An Enforceable Arbitration Agreement with SEA**</u>

Plaintiff and SEA entered into a valid agreement to arbitrate. SEA provided reasonable notice of the Arbitration Agreement and its terms everywhere a consumer like Plaintiff could be expected to look—on the box's label, in a hard-copy pamphlet inside the box, on SEA's website, on the phone itself, and during the device's initial set-up process that enabled her to use the phone. Plaintiff manifested her assent by opening, using, and setting up her Galaxy S21 without opting out.

1. **Agreement formation requires only reasonable notice and assent.** "To form a contract, there must be 'mutual manifestation of assent, whether by written or spoken word or by conduct.'" *Meyer*, 868 F.3d at 74 (alteration omitted). The key inquiry is whether the offeree takes the benefit of an offer knowing, or having reason to know, that the offeror "may infer" assent from this conduct. *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427-28 (2d Cir. 2004) (quoting Restatement (Second) of Contracts § 19(2) (1981)). Manifestation of assent can be accomplished by "words or silence, action or inaction." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 120 (2d Cir. 2012). Where, for instance, an offeree is afforded an opportunity to opt out of a contract but fails to do so, such inaction evinces assent. *Weiss v. Macy's Retail Holdings, Inc.*, 741 F. App'x 24, 27 (2d Cir. 2018). And where the offeree takes the benefit of a bargain, she is bound by the agreement whether or not she read its terms, "as long as she has notice of their existence." *Nicosia*, 834 F.3d

12

at 232.  Notice of an agreement's terms can be established by actual or inquiry notice.  *Starke v. SquareTrade, Inc*., 913 F.3d 279, 289 (2d Cir. 2019).

Although Plaintiff likely possessed actual notice of the Arbitration Agreement (given the multiple times it was presented to her), actual notice is not required.  Instead, it is well-settled that "the offeree will still be bound by the agreement if a reasonably prudent user would be on inquiry notice of the terms." *Meyer*, 868 F.3d at 74-75. "Inquiry notice is actual notice of circumstances sufficient to put a prudent [consumer] upon inquiry." *Schnabel*, 697 F.3d at 120; *see Glover v. Bob's Disc. Furniture, LLC*, 2022 WL 3353454, at *3 (S.D.N.Y. Aug. 12, 2022) ("party is on inquiry notice if a 'reasonably prudent' party 'would have noticed and reviewed the terms'"). To determine "whether an offeree is on inquiry notice" of contract terms, New York courts look to whether the agreement's terms were "obvious" and whether they were "called to the offeree's attention." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 102 (2d Cir. 2022).  "This often turns on whether the contract terms were presented to the offeree in a clear and conspicuous way." *Id.*  An offeree is therefore "still bound by the provisions" if she is on "inquiry notice of the terms and assents to them through the conduct that a reasonable person would understand to constitute assent." *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 394 (E.D.N.Y. 2015) (quoting *Schnabel*, 697 F.3d at 120 (cleaned up).

    **2.**    **This Court can enforce the Arbitration Agreement based on three independent grounds.**  In cases involving the enforceability of contract terms for consumer products, including electronic devices like the Galaxy S21, courts routinely apply these principles to three contract-formation scenarios: (1) shrinkwrap agreements where notice is provided on the ***outside*** of the

box[8]; (2) shrinkwrap agreements where notice is provided on materials accompanying the product *inside* the box[9]; or (3) clickwrap agreements where notice is provided ***electronically*** and users assent by clicking a box or button.[10]

Here, the Galaxy S21 satisfies ***all three*** scenarios (*see infra* at 15-23), thus creating an enforceable agreement in three ways—any one of which would independently require arbitration. *See, e.g.*, *Vasadi*, 2021 WL 5578736, at *9-10 (compelling arbitration based on exterior label and in-the-box notices for Galaxy S20, finding each separately enforceable, and thus seeing no need to reach issue of clickwrap notice); *Beture*, 2018 WL 4621586, at *7 (enforcing agreement to arbitrate found in clickwrap set-up process of SEA device under New York law). Plaintiff's failure to opt out of the Arbitration Agreement—despite being repeatedly informed of her right to do so and provided simple methods for exercising that right—serves as further confirmation: Plaintiff must arbitrate her claims. *See, e.g.*, *Glover*, 2022 WL 3353454, at *3 ("failure to repudiate" arbitration agreement "constitutes ratification").

---

[8] *See, e.g., Register.com*, 356 F.3d at 428; *Vasadi v. Samsung Elecs. Am. Inc.*, 2021 WL 5578736, at *9 (D.N.J. Nov. 29, 2021) (enforcing Arbitration Agreement announced on "Galaxy S20 box"); *Schmidt v. Samsung Elecs. Am., Inc.*, 2017 WL 2289035, at *3-4 (W.D. Wash. May 25, 2017) (SEA users assented to Arbitration Agreement where they "were warned on the outside of the [device's] box that 'additional Samsung terms and conditions' applied to their devices").

[9] *Vasadi*, 2021 WL 5578736, at *10 ("The 'Terms and Conditions' pamphlet contained in the Galaxy S20 box provides an additional and independent basis for finding that Plaintiffs had reasonable notice of the Arbitration Agreement."); *McNamara v. Samsung Telecomms. Am., LLC*, 2014 WL 5543955, at *6-7 (N.D. Ill. Nov. 3, 2014) (enforcing arbitration agreement based on Samsung user manual, which placed purchaser on notice of arbitration agreement); *Taylor v. Samsung Elecs. Am.*, 2018 WL 3921145, at *4-7 (N.D. Ill. Aug. 16, 2018) (same).

[10] *Meyer*, 868 F.3d at 75 (clickwrap agreements to arbitrate routinely enforced); *Aminoff & Co. v. Parcel Pro, Inc.*, 2022 WL 987665, at *3 (S.D.N.Y. Apr. 1, 2022) (plaintiff "was on inquiry notice" because he "had to click a check box" during activation); *Beture v. Samsung Elecs. Am., Inc.*, 2018 WL 4621586, at *6 (D.N.J. July 18, 2018) (rejecting argument that smartphone users "lacked reasonable notice of" arbitration agreement where notice was "displayed . . . during initial activation"); *Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, 2020 U.S. WL 6528422, at *7 (C.D. Cal. Oct. 20, 2020) (compelling arbitration based on clickwrap set-up process requiring SEA user to acknowledge arbitration provision).

(i) <u>Notice on the Galaxy S21 Exterior Packaging</u>.   In "shrinkwrap" agreements generally, the business provides notice of certain terms and conditions and "specif[ies] conduct that constitutes acceptance," including "inviting acceptance by unwrapping a product." *Dye v. Tamko Bldg. Prods.*, 908 F.3d 675, 681 (11th Cir. 2018); *see also, e.g.*, *Bassett v. Elec. Arts Inc.*, 2015 WL 1298644, at *6 (E.D.N.Y. Feb. 9, 2015) (enforcing arbitration agreement where "back of [product] packaging refers to the terms of service and identifies a web site" where one could view the terms, including the arbitration clause).[11]   In the Second Circuit, shrinkwrap agreements can be based on notice provided on the outside or inside of a product's packaging.[12]   "Generally, in the shrinkwrap context, the consumer does not manifest assent to the shrinkwrap terms at the time of purchase; instead, the consumer manifests assent to the terms by later actions." *Register.com*, 356 F.3d at 428 (citations omitted).   The shrinkwrap scenario requires a consumer to be placed on notice that certain **conduct** means assent: "Where a notice on a package states that the user agrees to certain terms by opening the package, a court could reasonably conclude . . . that

---

[11] These types of agreements are now ubiquitous, and reasonable consumers "should (and must) know that vendors will often employ a 'simple approve-or-return' model, enclosing their full legal terms with a product at shipment." *Dye*, 908 F.3d at 683.   Thus, as the Eleventh Circuit put it, "modern consumers are on notice that products come with warranties and other terms and conditions of purchase. And they are free to research (or not), request (or not), and read (or not) those terms before unwrapping their purchases." *Id.*   But the law "makes clear that providing conspicuously printed product packaging is an OK way to convey purchase terms," and that "consumers who purchase, open, and retain a product are thus bound in accordance with warranty terms conspicuously printed on that product's packaging, whether they actually take the time to read them or not." *Id.* at 683-84; *see also Noble v. Samsung Elecs. Am., Inc.*, 682 F. App'x 113, 117 (3d Cir. 2017) (recognizing that shrinkwrap packaging or exterior packaging containing arbitration agreement typically includes "language indicating that bilateral contractual terms or conditions are inside").

[12] *Compare Register.com*, 356 F.3d at 428 ("shrinkwrap" agreements involve "notice" of an "agreement on product packaging") *with Schnabel*, 697 F.3d at 121 ("In shrinkwrap-license cases, the terms at issue are typically provided inside the packaging of consumer goods.").   The distinction has no consequence here, as conspicuous notice was provided both outside the box *and* inside the box.   As discussed below, the important point is that the contract becomes enforceable "upon the customer's purchase and receipt of the package and the failure to return the product after reading, or at least having a realistic opportunity to read, the terms and conditions of the contract included with the product." *Schnabel*, 697 F.3d at 122.

the user has a duty to act in order to negate the conclusion that the consumer had accepted the terms in the notice." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1287 (9th Cir. 2017) (applying California law); *compare with Schnabel*, 697 F.3d at 126-27 (unsolicited email displaying arbitration clause did not place plaintiff on inquiry notice because it was "temporally and spatially decoupled" from plaintiff's enrollment in defendant's service).

Courts around the nation have enforced "shrinkwrap" agreements materially identical to the one at bar. Most recently, the U.S. District Court for the District of New Jersey compelled arbitration in *Vasadi* based on the arbitration notice provided on the Galaxy S20 smartphone's box—the exact same language contained on the Galaxy S21 packaging that Plaintiff would have encountered. *Compare* 2021 WL 5578736, at *2 ("If you use or retain the device, you accept Samsung's Terms and Conditions, including an Arbitration Agreement. Full terms, warranty and opt-out information are at www.samsung.com/us/Legal/ Phone-HSGuide/, the enclosed materials & device settings.") *with* Cantwell Decl. ¶ 8; Exh. A (same). The court found that—separate and apart from every other type of notice SEA provided—"the information printed" on SEA's exterior packaging **alone** "provided the requisite 'reasonably conspicuous' notice to support assent to the Arbitration Agreement between SEA and Plaintiff[]."[13] *Vasadi*, 2021 WL 5578736, at *9.

Just like in *Vasadi*, the packaging in this case offered Plaintiff clear notice, in classic contractual language, that (i) use or retention of the Galaxy smartphone constituted acceptance, and (ii) the Terms and Conditions—including the Arbitration Agreement—could be found inside

---

[13] *See also supra* note 9; *In re Samsung Galaxy Smartphone Mktg. and Sales Prac. Litig.*, 298 F. Supp. 3d 1285, 1297 (N.D. Cal. 2018) (compelling arbitration in part because Samsung smartphone's "outside of the box states that purchase is 'subject to additional Samsung terms and conditions," and "the text on the [Samsung smartphone] boxes uses classic contractual language by giving users notice of additional terms and conditions........Thus, the boxes would make a reasonable person aware of the existence of other binding conditions as part of the purchase.") (emphases omitted).

the package, on SEA's website (at a specific URL), and on the device itself.  Cantwell Decl. ¶ 8;

Exh. A.  And so, just like in *Vasadi*, "the information printed on the label of the Galaxy

[smartphone] box provided the requisite 'reasonably conspicuous' notice to support assent to the

Arbitration Agreement between SEA and Plaintiffs."  2021 WL 5578736, at *9.  SEA's motion

can and should be granted on that basis alone.[14]

By contrast, the very different facts demonstrating a lack of notice in *Norcia* and *Noble*

confirm *Vasadi*'s reasoning.  In *Norcia*, the court declined to enforce an arbitration agreement for

a device sold a decade ago because a consumer would have only encountered it for the first time

on ***page 76*** of an in-box brochure and "the outside of the Galaxy S4 box ***did not notify*** the

consumer that opening the box would be considered agreement to the terms set forth in the

brochure."  845 F.3d at 1287 (emphasis added).  Similarly, in *Noble*, the Third Circuit explained

that, in cases enforcing shrinkwrap agreements, the packaging or cover of the document containing

the arbitration agreement typically includes "language indicating that bilateral contractual terms

or conditions are inside."  682 F. App'x at 117 (declining to enforce agreement for device sold in

2015 where "the only manner in which a consumer could receive notice of the Clause at issue here

would be to read ninety-seven pages into the Guide where the Clause appears, or to happen upon

page ninety-seven by luck").  Both *Norcia* and *Noble* confirm why Plaintiff is bound to arbitrate

---

[14] *See also, e.g.*, *James v. Glob. TelLink Corp.,* 852 F.3d 262, 267 (3d Cir. 2017) ("[C]onsumers in the shrinkwrap-license cases received physical copies of the terms and conditions upon opening the products, and their subsequent use of the products manifested assent to the enclosed terms."); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1451 (7th Cir. 1996) (noting shrinkwrap agreements generally enforceable); *In re Wyze Data Incident Litig.*, 2020 WL 6202724, at *6-7 (W.D. Wash. Oct. 22, 2020) (state law "clearly allows for the enforcement of 'shrink-wrap' agreements, even if the consumer did not read the agreement"); *HealthPlanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 331 (W.D. Pa. 2020) (assessing whether "the terms are reasonably conspicuous" so that "the user can be fairly charged with 'constructive notice' that continued use will constitute acceptance of the agreement"); *Davidson & Assocs. v. Internet Gateway*, 334 F. Supp. 2d 1164, 1178 (E.D. Mo. 2004) (agreement enforceable where outside packaging stated product was subject to a contract and full terms disclosed before installation).

here.  Indeed, the *Vasadi* court—when enforcing an identical shrinkwrap agreement—held that, "unlike the situation presented in *Noble*," the notice provided with the Galaxy S20 would have put a "reasonable consumer . . . on notice of the 'Terms and Conditions' contained in the packaging, and a fairly simple inspection of the box would reveal the written material." *Vasadi*, 2021 WL 5578736, at *10.

        (ii)    <u>Notice Inside the Galaxy S21's Box</u>.  Courts also routinely enforce consumer contracts where the terms are "provided inside the packaging" because in such cases, the consumer is "confronted with the existence of [the] terms" before they can "benefit from them." *Schnabel*, 697 F.3d at 121, 127; *see Vasadi*, 2021 WL 5578736, at *10 ("The 'Terms and Conditions' pamphlet contained in the Galaxy S20 box provides an additional and independent basis for finding that Plaintiffs had reasonable notice of the Arbitration Agreement."); *Brower v. Gateway 2000, Inc.*, 676 N.Y.S. 2d 569, 570 (App. Div. 1998) (enforcing arbitration agreement printed on in-box materials stating that, "By keeping [product] beyond thirty (30) days after the date of delivery, you accept these Terms and Conditions"); *McNamara*, 2014 WL 5543955, at *2-3 (enforcing arbitration agreement because user guide provided inquiry notice, reasoning that smartphones are "by their nature are extremely complicated and provide for a multitude of activities" and "[b]ecause of these qualities, a purchaser would be expected to review the product user guide in order to get as much out of the product as he can").

        Here, when Plaintiff opened her Galaxy S21 box, she received a short pamphlet prominently titled "Terms and Conditions," informing her on the cover in bolded font: "**Read this document before operating the mobile device, accessories or software (defined collectively and individual as the "Product")**."  Cantwell Decl. ¶ 9; Exh. B.  It then notified consumers that "**[e]lectronic acceptance, opening the packaging, use, or retention of the Product constitutes**

18

**acceptance of these Terms and Conditions**," followed by a conspicuous notification that, "**This Product is subject to a binding arbitration agreement**." *Id.* ¶¶ 9-10; Exh. B. The pamphlet also highlighted the Arbitration Agreement, including where it could be found and how to easily opt out by email or phone within 30 days of purchase. Cantwell Decl. ¶¶ 9-11; Exh. B.

Numerous courts have compelled arbitration based on similar in-box pamphlets and user guides. *See, e.g.*, *Vasadi*, 2021 WL 5578736, at *10 (discussing how "Terms and Conditions" pamphlet in Galaxy S20 box supplied "an additional and independent basis for finding that Plaintiffs had reasonable notice of the Arbitration Agreement").[15] This Court should do the same.

(iii)    Notice During the "Clickwrap" Set-Up Process.  In addition to the conspicuous notices on the packaging, on SEA's website, and inside the box, Plaintiff was also required to explicitly acknowledge the Terms and Conditions, including arbitration terms, during the set-up process. This mandatory process required her to accept the Terms and Conditions on an interactive page marked "**A few legal items to review**" by clicking on the bubble next to "Terms and conditions" and/or marking that she has "read and agree to all of the above" before using her Galaxy S21. Cantwell Decl. ¶ 15; Exh. C. Before Plaintiff could activate or use her phone, she had to affirmatively agree to the Terms and Conditions and then tap the "Next" bubble to finish the set-up process. Cantwell Decl. ¶ 17; Exh. C.

"Courts routinely uphold clickwrap agreements" like these because the user "affirmatively assent[s]" to the contract presented. *Meyer*, 868 F.3d at 75; *see also, e.g.*, *Cimillo v. Experian Info.*

---

[15] *See also, e.g.*, *Schmidt*, 2017 WL 2289035, at *3-4 (enforcing in-the-box agreement to arbitrate for a different SEA smartphone); *McNamara*, 2014 WL 5543955, at *1 (holding that products' user manuals provided reasonable notice of arbitration clause); *In re Samsung Galaxy Smartphone*, 298 F. Supp. 3d at 1300 (enforcing in-the-box arbitration clause where materials directed "consumer to read the important legal information," including arbitration provision and provided opt-out procedure); *Taylor*, 2018 WL 3921145, at *3 (enforcing arbitration agreement announced on SEA smartphone in-the-box user guide).

*Sols., Inc.*, 2023 WL 2473403, at *5 (S.D.N.Y. Mar. 13, 2023) ("no reasonable trier of fact could find that [consumer] did not assent" to arbitration agreement where she "could not have . . . used [defendant's] service" without clicking button manifesting assent); *Beture*, 2018 WL 4621586, at *7 (enforcing clickwrap agreement between SEA and smartphone user under New York law); *Velasquez-Reyes*, 2020 WL 6528422, at *4 (enforcing clickwrap arbitration agreement because consumer's act of "clicking on a dialog box on the screen to proceed with the transaction" manifested "consent to terms and conditions").[16]  Whether a traditional or digital agreement, "[a] party who executes a contract is considered bound by the terms of that contract."  *Aminoff & Co.*, 2022 WL 987665, at *3.

In *Meyer*, for instance, the Second Circuit reversed an order declining to compel arbitration where the plaintiff created a user account after viewing a screen stating that, "By creating an Uber account, you agree to the TERMS OF SERVICE," and providing a hyperlink to those terms of service, which contained an arbitration clause. 868 F.3d at 78-79; *see also infra* at 21. This language, the Court held, was a "clear prompt directing users to read the Terms and Conditions and signaling that their acceptance of the benefit of registration would be subject to contractual terms." 868 F.3d at 79.  Because the plaintiff proceeded to create an account, he "unambiguously manifested his assent to Uber's Terms of Service," including the arbitration clause.  *Id.* at 80.

The same is true here.  Only by clicking a bubble signaling her acceptance to the Galaxy

---

[16] *See also, e.g.*, *Bar-Ayal v. Time Warner Cable Inc*., 2006 WL 2990032, at *9-10 (S.D.N.Y. Oct. 16, 2006) (compelling arbitration where user installed software that could only be installed by clicking "Accept" button, manifesting assent to arbitration clause); *Moore v. Microsoft Corp*., 741 N.Y.S. 2d 91, 92 (App. Div. 2002) (plaintiff assented to contract where he installed software that could only be installed "by clicking on the 'I agree' icon before proceeding"); *Starke v. Gilt Groupe, Inc*., 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) ("Regardless of whether he actually read the contract's terms, [plaintiff] was directed exactly where to click in order to review those terms, and his decision to click the 'Shop Now' button represents his assent to them.").

S21's "Terms and conditions," including the Arbitration Agreement, could Plaintiff have completed her device's initial set-up process.  Cantwell Decl. ¶¶ 13-17; Exh. C.  Like in *Meyer*, the screen provided a hyperlink to those Terms and Conditions, which included an arbitration clause. Cantwell Decl. ¶¶ 15-16; Exhs. C, D.  In fact, Plaintiff's conduct here more clearly signaled her acceptance than did that of the plaintiff in *Meyer*: Rather than creating an account, Plaintiff affirmatively clicked—indicating an indisputable "yes"—on a "Terms and conditions" bubble on a page captioned "**A few legal items to review**."  Cantwell Decl. ¶¶ 13-15; Exh. C.  SEA's terms-and-conditions prompt was also more conspicuous than Uber's prompt in *Meyer*:





As shown above, Uber's prompt is not the screen's focal point—rather, the screen is captioned "Payment" and prompts users to enter credit card information.   The terms-and-

21

conditions prompt is located near the bottom of the screen, on a crowded page, in smaller text than the rest of the content. *Meyer*, 868 F.3d at 81 (Addendum A). By comparison, SEA's prompt sat near the top of an uncluttered screen announcing "**[a] few legal items**" in bold print—language placing any reasonable consumer on alert that accepting the "Terms and conditions" affected their legal rights. Cantwell Decl., Exh. C.

In short, by explicitly acknowledging the "Terms and conditions," Plaintiff affirmatively agreed to the Galaxy S21's Terms and Conditions, including the Arbitration Agreement. *See, e.g.*, *Beture*, 2018 WL 4621586, at *5-6 (enforcing clickwrap arbitration agreement presented during smartphone activation); *Velasquez-Reyes*, 2020 WL 6528422 at *3-4 (holding that SEA "met its burden of showing that [plaintiff] consented to the Arbitration Agreement through the clickwrap set-up process" where "user cannot proceed . . . and use the phone until clicking a bubble next to the words 'Terms and Conditions' or 'Agree to all' and then clicking 'Next'").

\*   \*   \*

Plaintiff was on notice that unboxing, activating, and using her Galaxy S21 constituted acceptance of the Arbitration Agreement. She could have opted out easily, but SEA has no record that she ever did so. Cantwell Decl. ¶¶ 7-10, 23, 25-27. And even if she ignored the many ways that SEA advised her that this Arbitration Agreement would apply to her, she is still bound. The Court should compel Plaintiff to arbitrate her claims against SEA, just as she agreed.

### B.    Arbitrability

Because the parties' Arbitration Agreement "clea[rly] and unmistakab[ly]" assigns questions regarding the Arbitration Agreement's scope to the arbitration, the Court should compel arbitration without considering whether the Arbitration Agreement encompasses the claims advanced in Plaintiff's Complaint. *First Options of Chi., Inc.*, 514 U.S. at 943-45. Indeed, the

Arbitration Agreement provides that "[t]he arbitrator shall decide all issues of interpretation and application of this Agreement." Cantwell Decl. ¶ 24, Exh. E. Construing this same provision, the District of New Jersey held this exact language to "unambiguously" delegate to the arbitrator "the authority to decide issues concerning the interpretation and/or scope of the Arbitration Agreement." *Vasadi*, 2021 WL 5578736, at *7; *see also PaineWebber Inc.*, 81 F.3d at 1198-99 (contract term requiring arbitration of all disputes related to "construction" of agreement "encompass[ed] disputes over . . . whether a claim is within the scope of arbitration"); *Begonja v. Vornado Realty Tr*., 159 F. Supp. 3d 402, 406 n.4 (S.D.N.Y. 2016) (similar).

The Arbitration Agreement separately delegates the arbitrability issue to the arbitrator by expressly incorporating the American Arbitration Association ("AAA") Commercial Arbitration Rules. Cantwell Decl. ¶ 24, Exh. E; *see Vasadi*, 2021 WL 5578736, at *7 (incorporation of AAA terms in Arbitration Agreement between Galaxy S20 user and SEA delegated arbitrability issue to arbitrator). Rule R-7(a) of those rules require the arbitrator to decide issues relating to the "scope" of "the arbitration agreement." AAA Comm. Arb. R. R-7(a). "[W]hen, as here, parties explicitly incorporate [AAA] rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Sol., Co*., 398 F.3d 205, 208 (2d Cir. 2005) (citing AAA Comm. Arb. R. R-7(a)).

The Court should thus compel arbitration without reaching the issue whether the Arbitration Agreement covers Plaintiff's claims.

### C.    The Arbitration Agreement's Breadth

Should the Court reach the issue nonetheless, it should find that Plaintiff's claims fall entirely within the Arbitration Agreement's scope. Because the FAA reflects a "liberal federal

policy favoring" enforcement, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983).

The Arbitration Agreement between Plaintiff and SEA "is the paradigm of a broad clause" to arbitrate, *Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995), encompassing all claims that "relate to, or arise from" the Galaxy S21's sale, condition, performance, or warranty. Cantwell Decl. ¶ 20; Exh. E. Plaintiff's claims fall within each of these categories. First, all her claims arise from the Galaxy S21's "sale." Simply put, if she had not "purchased" her Galaxy S21 (Compl. ¶ 25), she would have no claim. Further, the gravamen of her lawsuit is that, although the Galaxy S21 does in fact have 128 GB of storage, the fact that part of that storage is used to store and run the device's operating system makes SEA's advertisements allegedly "fraudulent." *Id.* ¶¶ 1-4, 11. In other words, the device's "condition" and "performance" differed from her expectations (despite Samsung's truthful marketing and clear disclaimers, *supra* note 1). Plaintiff additionally alleges that SEA breached the device's standard limited warranty. Compl. ¶¶ 49, 57, 59. The claims alleged in her Complaint are thus precisely the kinds of claims she agreed to arbitrate.

*   *   *

In short, Plaintiff entered into a valid agreement to arbitrate, and all her claims fall comfortably within its scope. The Court should thus issue an order compelling arbitration. *See, e.g.*, *ACE Cap. Re Overseas*, 307 F.3d at 35-36 (directing trial court to compel arbitration where both elements met).

### D.   <u>Dismissal</u>

Because each of Plaintiff's claims is subject to binding arbitration, there is no reason for

this Court to retain jurisdiction.  Courts around the nation, including in New York and the Second Circuit, regularly dismiss claims that must be resolved through arbitration.  *See, e.g.*, *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1358-59 (2d Cir. 1993); *Rubin v. Sona Int'l Corp.*, 457 F. Supp. 2d 191, 198 (S.D.N.Y. 2006); *Brower*, 676 N.Y.S. 2d at 571; *Cupples v. Valic Fin. Advisors, Inc.*, 2014 WL 4662272, at *5 (E.D.N.Y. Sept. 18, 2014); *Johnson v. Orkin, LLC*, 556 F. App'x 543, 544-45 (7th Cir. 2014); *Alford v. Dean Witter Reynolds*, Inc., 975 F.2d 1161, 1164-65 (5th Cir. 1992); *Jackson v. Butler*, 2009 WL 2244588, at *3 (E.D. Mich. July 27, 2009); *Johnston v. Beazer Homes Texas, L.P.*, 2007 WL 708555, at *4 (N.D. Cal. Mar. 2, 2007).  "Where all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings."  *Rubin*, 457 F. Supp. 2d at 198 (citing *Alford*, 975 F.2d at 1164).  Under the circumstances, "retaining jurisdiction and staying the case serves little purpose and is a waste of judicial resources." *Soucy v. Cap. Mgmt. Servs., L.P.*, 2015 WL 404632, at *6 (N.D. Ill. Jan. 29, 2015).  Because arbitration clauses are no more than a "specialized kind of forum-selection" agreement, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 630 (1985), the appropriate outcome when a party seeks to litigate claims that belong in arbitration is dismissal for improper venue under Rule 12(b)(3). *See, e.g.*, *Roby*, 996 F.2d at 1358-59; *Johnson*, 556 F. App'x at 544.

## V.    CONCLUSION

For the reasons above, SEA respectfully requests that the Court issue an order compelling Plaintiff to arbitrate her claims on an individual basis and dismissing the action.

Dated: April 14, 2023                     Respectfully submitted,

By: /s/ *Hannah Chanoine*
Hannah Chanoine
O'MELVENY & MYERS LLP

Times Square Tower
7 Times Square
New York, NY 10036
(212) 326-2000
hchanoine@omm.com