UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
TIFFANY MCDOUGALL,                                           :
                                        Plaintiff,           :
                                                             :        23 Civ. 168 (LGS)
                    -against-                                :
                                                             :
SAMSUNG ELECTRONICS AMERICA, INC.,                           :
                                        Defendant.           :
                                                             :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

Plaintiff Tiffany McDougall brings claims on behalf of two putative classes for breach of contract, breach of express warranty, breach of the implied warranty of merchantability, violation of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, negligent misrepresentation, fraud, unjust enrichment and violations of several state consumer-protection statutes. Defendant Samsung Electronics America, Inc. ("SEA") moves to compel arbitration of all claims. For the reasons below, Defendant's motion is granted.

I.      BACKGROUND

The following facts are taken from the Complaint and the parties' submissions on this motion. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). The facts are largely undisputed.

A.      McDougall's Claims

McDougall purchased a Galaxy S21 Ultra 5G smartphone with 128 gigabytes ("GB") of storage (the "Product") in or around September 2021. SEA sells the Product from Samsung stores and through third-party partners.

The Complaint alleges that SEA misled Plaintiff into purchasing the Product because part of the phone's advertised 128 GB of storage space is occupied by its operating system and

preinstalled applications, leaving only 101.4 GB of "available memory" for Plaintiff to store applications, photos, videos and music on her device.  Plaintiff claims that any disclosures about the reduced "available memory" are "not conspicuous to purchasers at the point of sale."  The Complaint further alleges that Plaintiff would not have purchased the Product or paid as much if "the true facts had been known."

### B.       The Arbitration Agreement

The Product's Terms and Conditions at the relevant time stated: "This Product is subject to a binding arbitration agreement between you and [SEA]."  The arbitration agreement at issue ("Arbitration Agreement")  states:

> This is a binding legal agreement ("Agreement") between you (either an individual or entity) and [SEA].  Electronic acceptance of the agreement, opening the product packaging, use of the product, or continued possession of the product, constitutes acceptance of this agreement . . . .  You and [SEA] each agree that all disputes between you and [SEA] that in any way relate to, or arise from, the standard limited warranty; or the sale, condition, or performance of the product, shall be resolved exclusively through final and binding arbitration, and not by a court or jury.

The Arbitration Agreement also states that "[t]he arbitrator shall decide all issues of interpretation and application of this Agreement."  The Terms and Conditions allowed users to opt out of the Arbitration Agreement by email or phone within thirty days of purchase.

### C.       Notice of Arbitration Agreement

Defendant provided notice of the Arbitration Agreement on the Product's packaging, in a "Terms and Conditions" pamphlet inside the Product's box and through an interactive set-up process on the phone's screen.

#### 1.       Notice on Product's Packaging

In the United States, the Product is sold packaged in a box with external labeling, which provides information about the device.  Near the top of the label, SEA informs consumers in bold

font that the "Packaging Contains . . . Terms and Conditions." Below that, the packaging notifies users in bold font that using or retaining the device constitutes acceptance of the Terms and Conditions, including an arbitration agreement. The box provides a URL that leads to the full Arbitration Agreement on SEA's website.

### 2. Notice on Pamphlet Inside Product's Box

Each Product's box contains a pamphlet titled "Terms and Conditions." The first page features bolded text that includes the following language: "Arbitration Agreement -- This Product is subject to a binding arbitration agreement between you and [SEA]. You can opt out of the agreement within 30 calendar days" by email or phone. Below that, the pamphlet provides a URL to the full Arbitration Agreement on SEA's website. The pamphlet also informs users that the full Terms and Conditions and the Arbitration Agreement can be found "on the device" itself in the "Settings" folder, and provides instructions on how to access these documents.

### 3. Notice During Set-Up Process

To activate and use the Product, Plaintiff was required to complete an initial-set up process on the device when she first turned it on. The second screen in this process was captioned "A few legal items to review" and included "Terms and conditions" as the first item. Immediately next to the "Terms and conditions" label was a checkbox that populated with a checkmark when clicked. Directly below, a bold, underlined hyperlink labeled "Details" led users to a webpage containing a scrollable version of the Product's full Terms and Conditions. Users who clicked on the hyperlink would not have to scroll to see the Arbitration Agreement, as it appeared at the top of the screen. Below the "Terms and conditions" label, there was a clickable checkbox next to the words "I have read and agree to all of the above." Users could not proceed with the setup process without checking that field.

## II.     LEGAL STANDARD

### A.     Choice of Law

New York Law applies because the Arbitration Agreement includes a choice of law provision applying New York law, *see Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 50 (2d Cir. 2004) ("[The Second Circuit has] applied a choice-of-law clause to determine which laws govern the validity of an agreement to arbitrate." (collecting cases)), and the parties' submissions assume that New York law applies, *see In re Snyder*, 939 F.3d 92, 100 n.2 (2d Cir. 2019) ("[I]mplied consent is . . . sufficient to establish the applicable choice of law[.]").[1]

### B.     Arbitrability

In deciding a motion to compel arbitration, courts apply a "standard similar to that applicable for a motion for summary judgment." *Nicosia*, 834 F.3d at 229.  Courts must "consider all relevant, admissible evidence submitted by the parties" and must "draw all reasonable inferences in favor of the non-moving party." *Id.*

The Federal Arbitration Act ("FAA") "embodies a national policy favoring arbitration founded upon a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, their disputes." *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019).  The statute was "designed to allow parties to avoid the costliness and delays of litigation, and to place arbitration agreements upon the same footing as other contracts." *Daly v. Citigroup, Inc.*, 939 F.3d 415, 421 (2d Cir. 2019).  "[T]he first principle" of an arbitration decision is that "[a]rbitration is strictly a matter of consent." *Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 113 (2d Cir. 2023).

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes and citations are omitted.

Before compelling arbitration, a court must determine two threshold issues: whether (1) the parties agreed to arbitrate and (2) the scope of that agreement encompasses the claims at issue. *Daly*, 939 F.3d at 421. In evaluating whether the parties have entered into a valid arbitration agreement and their intent, the court must "apply ordinary state-law principles that govern the formation of contracts." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 317 (2d Cir. 2021).

### III.    DISCUSSION

Defendant contends that Plaintiff's claims must be resolved through arbitration as Plaintiff was presented with, and affirmatively accepted, the Arbitration Agreement. In response, Plaintiff argues that: (1) there was no binding agreement to arbitrate because Plaintiff was not put on notice of the terms; (2) the Arbitration Agreement is unconscionable and therefore unenforceable and (3) if the Court finds an enforceable agreement to arbitrate, the Court, not an arbitrator, should determine whether the agreement encompasses the claims at issue. Plaintiff's arguments are unpersuasive.. The parties' agreement to arbitrate is enforceable.

#### A.    Reasonable Notice of Arbitration Agreement's Terms

The Arbitration Agreement is enforceable because Plaintiff was on inquiry notice of its terms. Arbitration is a "creature of contract." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019). The same principles that apply to paper contracts apply to smartphone-based contracts. *See id.* at 289; *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017).[2] To be binding, a contract requires a "meeting of the minds" and "a manifestation of mutual assent."

---

[2] The Second Circuit in *Meyer* applied California law but noted that "New York and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term." 868 F.3d at 74. The Second Circuit in *Starke* relied on the framework in *Meyer* while applying New York law. 913 F.3d at 281, 288, 292 (affirming denial of motion to compel arbitration on facts distinguishable from the present case).

*Starke*, 913 F.3d at 288 (2d Cir. 2019) (quoting *Express Indus. & Terminal Corp. v. N.Y. Dep't of Transp.*, 715 N.E.2d 1050, 1053 (N.Y. 1999)). "Where an offeree does not have actual notice of certain contract terms, he is nevertheless bound by such terms if he is on inquiry notice of them and assents to them through conduct that a reasonable person would understand to constitute assent." *Id.* at 289 (New York law). Offerees are on inquiry notice "where the notice of the arbitration provision was reasonably conspicuous and manifestation of assent unambiguous as a matter of law." *Meyer*, 868 F.3d at 76; *see also Starke*, 913 F.3d at 289.

For web-based contracts, "[w]hether a reasonably prudent user would be on inquiry notice turns on the clarity and conspicuousness of arbitration terms," which "are a function of the design and content of the relevant interface." *Meyer*, 868 F.3d at 75; *see also Starke*, 913 F.3d at 289 ("[W]e look to the design and content of the relevant [website] interface to determine if the contract terms were presented to the offeree in way that would put her on inquiry notice of such terms."). Similarly, "an electronic 'click' can suffice to signify the acceptance of a contract," as long as "the layout and language of the [interface] give the user reasonable notice that a click will manifest assent to an agreement." *Meyer*, 868 F.3d at 75. "Insofar as it turns on the reasonableness of notice, the enforceability of a web-based agreement is clearly a fact-intensive inquiry." *Id.* at 76.

Courts "routinely uphold" these "clickwrap" agreements. *Id.* at 75. In *Meyer*, the Second Circuit found that a user who signed up for an Uber account through a smartphone interface was on inquiry notice of an arbitration provision within the hyperlinked "Terms of Service." *Id.* at 78-79. The court concluded that the interface provided reasonable notice of the contract terms contained within the hyperlink because the hyperlink was clear and conspicuous. *Id.* at 77-78. In so concluding, the court noted the following about the design of the screen and the language

used:

- The payment screen was uncluttered and displayed only fields for the user to enter his or her credit card information, a button to register and the warning that, "By creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY." *Id.* at 78.

- The entire screen was visible at once. *Id.*

- The hyperlinks to the Terms and Conditions and Privacy Policy appeared directly below, i.e., were "spatially coupled" with, the registration button. *Id.*

- The hyperlinks were "temporally coupled" with the registration button, i.e., it was "provided simultaneously to enrollment, thereby connecting the contractual terms to the services to which they apply." *Id.*

- The language "[b]y creating an Uber account, you agree" was "a clear prompt directing users to read the Terms and Conditions and signaling that their acceptance of the benefit of registration would be subject to contractual terms." *Id.* at 79.

These factors led the court to conclude that a reasonable user would know that by clicking the registration button, she was agreeing to the terms and conditions accessible via the hyperlink. Thus, regardless of whether she actually clicked the hyperlink, the user manifested assent to the terms and conditions as a matter of law. *See id.* at 79-80.

The reasoning of *Meyer* "provides the framework within which [the Second Circuit] analyze[s] the validity of assent to terms and conditions presented through a web interface." *Starke*, 913 F.3d at 292. Whether Plaintiff had reasonable notice of the Arbitration Agreement depends on whether the Product's terms and conditions were provided to Plaintiff in a clear and conspicuous manner. Based on the factors in *Meyer*, SEA's interface provided clearer and more conspicuous notice to users than Uber's screen. As shown below, both screens were entirely visible without scrolling, while SEA's page was less cluttered. *See Meyer*, 868 F.3d at 81. Uber's prompt is not the screen's focal point -- rather, the screen is captioned "Payment" and prompts users to enter credit card information. The "Terms of Service & Privacy Policy" prompt is located near the bottom of the screen in smaller text than the rest of the content. By

comparison, SEA's interface drew attention to "legal items" in large, bold font near the top of the page. Plaintiff thus had reasonably conspicuous notice of the Terms and Conditions, including the Arbitration Agreement.

Compared to *Meyer*, there is also a clearer signal that Plaintiff "unambiguously manifested [her] assent" to the Arbitration Agreement. *See id.* at 80. Uber's users signaled acceptance of contract terms only by clicking the "Register" button, which the *Meyer* court found was spatially and temporally coupled with notice of the contract's terms. *Id.* Here, Plaintiff could not have proceeded with the setup process without clicking the checkboxes directly next to "Terms and conditions" and "I have read and agree to all of the above." These actions unambiguously indicate an affirmative acceptance of the hyperlinked terms.

Because Plaintiff was on inquiry notice of the Product's Terms and Conditions, and she unambiguously manifested her assent to those terms, the parties created a binding agreement to arbitrate. As the "clickwrap" agreement alone is sufficient to support inquiry notice, it is unnecessary to address Defendant's arguments that the Product's packaging and the "Terms and Conditions" pamphlet independently put Plaintiff on inquiry notice of the Arbitration Agreement.



Plaintiff suggests that courts do not typically enforce electronic contracts where users are not required to scroll through terms and conditions. But such "scrollwrap" contracts are just one of "infinite ways to design a website or smartphone application." *Id.* at 75 (finding Uber's "clickwrap" contract, which did not require users to scroll through terms, binding).

Plaintiff further cites language from *Nicosia*, arguing that "reasonable minds could disagree" whether Defendant put Plaintiff on inquiry notice of the Arbitration Agreement. 834 F.3d at 237-38. But *Nicosia* is inapposite here. In *Nicosia*, the court found a material dispute of fact as to whether an Amazon order page put users on inquiry notice of an arbitration provision and left the issue to the factfinder. *Id.* at 233-38. The court's analysis hinged on several features of the page's design which are wholly absent from Defendant's interface. Amazon's interface

was cluttered with diverse text, displayed in multiple colors, sizes and fonts, and featured various buttons and promotional advertisements that distracted the reader from the relevant hyperlink. *Id.* at 235-37. *Nicosia* is distinguishable from the present case.

Plaintiff also cites *Meyer v. Kalanick*, claiming that she should "be forgiven for assuming that 'Terms [and Conditions]' refers to a description of the types of services that [Defendant] intends to provide, not to the user's waiver of h[er] constitutional right to a jury trial or h[er] right to pursue legal redress in court." 200 F. Supp. 3d 408, 421 (S.D.N.Y. 2016). However, as discussed above, the Second Circuit abrogated this holding, finding Uber's Terms of Service hyperlink put users on inquiry notice of the arbitration provision therein. *Meyer*, 868 F.3d at 79.

Plaintiff also argues that Defendant cannot "'incorporate[] by reference'" the "legal items" set-up screen into the Arbitration Agreement because the screen does not specifically reference the Arbitration Agreement. This argument fails as it relies on inapposite precedent and Defendant does not advance any incorporation-by-reference theory.

    **B.**    **Unconscionability**

Plaintiff argues that she should not be compelled to arbitrate because the Arbitration Agreement is unconscionable. This argument is without merit.

If Plaintiff's argument is that the contract as a whole is unconscionable, it fails. "[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006); *see also Haymount Urgent Care PC v. GoFund Advance, LLC*, 635 F. Supp. 3d 238, 245 (S.D.N.Y. 2022) ("Reserving for the arbitrator the initial determination as to whether an allegedly void agreement is in fact void makes sense, because the whole point of the arbitration provision is to decide in which forum claims should be made and arguments decided. Allowing

such a claim to proceed in court would therefore frustrate the arbitration agreement.").

If Plaintiff's argument is that the arbitration provision alone is unconscionable, that argument is also unpersuasive. Under New York law, an arbitration agreement is unconscionable if it is "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (quoting *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988)); *accord Am. Fam. Life Assurance Co. of N.Y. v. Baker*, 778 F. App'x 24, 27 (2d Cir. 2019) (summary order) (New York law). Generally, there must be a showing that such a contract was "both procedurally and substantively unconscionable when made." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 208 (2d Cir. 2018) (quoting *Gillman*, 534 N.E.2d at 828). "The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract." *Ragone*, 595 F.3d at 121-22; *accord Glover v. Bob's Disc. Furniture, LLC*, 621 F. Supp. 3d 442, 449 (S.D.N.Y. 2022). Procedural and substantive unconscionability operate on a "'sliding scale'; the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa." *State v. Wolowitz*, 468 N.Y.S.2d 131, 145 (2d Dep't 1983); *accord Catz v. Precision Glob. Consulting*, No. 19 Civ. 7499, 2021 WL 1600097, at *5 (S.D.N.Y. Apr. 23, 2021).

The Arbitration Agreement is not procedurally unconscionable. Plaintiff claims she lacked meaningful choice in agreeing to the terms because Defendant had a bargaining advantage and offered a contract of adhesion to an unsophisticated consumer on a "take-it-or-leave-it" basis. However, the contract's terms were not unchangeable -- as stated in the opt-out provision of the Arbitration Agreement, Plaintiff could have opted out of the Arbitration

Agreement without penalty by placing a phone call or sending an email.

Plaintiff's arguments are also unsupported by precedent.  In finding contractual provisions procedurally unconscionable, courts look for "high pressure commercial tactics, inequality of bargaining power, deceptive practices and language in the contract, and an imbalance in the understanding and acumen of the parties."  *Wolowitz*, 468 N.Y.S.2d at 145; *accord Sea Tow Servs. Int'l, Inc. v. Tampa Bay Marine Recovery, Inc.*, 632 F. Supp. 3d 91, 115 (E.D.N.Y. 2022).  But "[m]ere inequality in bargaining power is not a sufficient basis for finding an arbitration clause unenforceable . . . ."  *De Jesus v. Gregorys Coffee Mgmt., LLC*, No. 20 Civ. 6305, 2021 WL 5591026, at *6 (E.D.N.Y. Nov. 29, 2021) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991) (describing disparity in bargaining power in employment context)).  Similarly, whether a contract is offered "on a 'take it or leave it basis' . . . is not sufficient under New York law to render the [arbitration] provision procedurally unconscionable."  *Ragone*, 595 F.3d at 122; *accord Catz*, 2021 WL 1600097, at *6.  As Plaintiff does not allege any elements of procedural unconscionability beyond inequality of bargaining power and the use of a form contract, her argument fails.

Plaintiff requests an evidentiary hearing to determine whether the terms of the Arbitration Agreement were substantively unconscionable.  The request is denied because Plaintiff has not placed in issue any disputed facts that would render the Arbitration Agreement substantively unconscionable.  "Where the significant facts germane to the unconscionability issue are essentially undisputed, the court may determine the issue without a hearing."  *Emigrant Mortg. Co. v. Fitzpatrick*, 945 N.Y.S.2d 697, 700 (2d Dep't 2012); *accord De Jesus*, 2021 WL 5591026, at *6.  The Arbitration Agreement is not substantively unconscionable because its terms are not "grossly unreasonable" or "outrageous," as they bind both parties equally to arbitration.  *See*

*Suqin Zhu v. Hakkasan NYC LLC*, 291 F. Supp. 3d 378, 391-92 (S.D.N.Y. 2017) (New York law) (concluding that the arbitration clause at issue was not substantively unconscionable, in part, because the terms of the agreement applied equally to both parties).  Because the Arbitration Agreement is neither procedurally nor substantively unconscionable, it may not be invalidated on unconscionability grounds.

        C.      **Scope of Arbitration Agreement**

Plaintiff argues that, if the Court finds mutual assent and therefore an enforceable arbitration agreement, the issue of arbitrability should be decided by the Court, rather than the arbitrator.  This argument is unpersuasive because the parties agreed to delegate the issue of arbitrability to the arbitrator.  The Second Circuit has recognized that threshold questions of arbitrability, such as whether the arbitration agreement applies to a particular dispute, "presumptively should be resolved by the court and not referred to the arbitrator."  *DDK Hotels, LLC*, 6 F.4th at 317.  Still, parties may delegate the threshold question of arbitrability to an arbitrator, "so long as the parties' agreement does so by clear and unmistakable evidence."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019); *accord DDK Hotels, LLC*, 6 F.4th at 316-17.

SEA's Arbitration Agreement both expressly and implicitly delegates the issue of arbitrability to the arbitrator.  The agreement provides that "[t]he arbitrator shall decide all issues of interpretation and application of this Agreement."  The breadth of the Arbitration Agreement's scope and its incorporation of the AAA Rules, which themselves provide the arbitrator with authority to decide issues of scope and applicability, provide clear and unmistakable evidence of the parties' intent to arbitrate arbitrability.  *See DDK Hotels, LLC*, 6 F.4th at 318-19 ("[W]here the arbitration agreement is broad and expresses the intent to arbitrate all aspects of all disputes,

13

this -- coupled with incorporation of [AAA Rules] that expressly empower an arbitrator to decide issues of arbitrability -- constitutes clear and unmistakable evidence of the parties' intent to delegate the question of arbitrability to the arbitrator."); *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 211 (2d Cir. 2005) (similar).  In light of the Arbitration Agreement's broad delegation, any question of arbitrability is properly decided by the arbitrator.

### D. Motion to Dismiss

Defendant moves to dismiss, arguing that claims subject to arbitration should be dismissed for improper venue under Federal Rule of Civil Procedure 12(b)(3).  Defendant's motion is denied because the court "must stay proceedings once it is satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding." *Nicosia*, 834 F.3d at 229.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to compel arbitration is **GRANTED**, and the case is **STAYED**.

By **December 4, 2023**, and every **sixty days** thereafter, the parties shall file a joint letter apprising the Court of the status of any arbitration.  The parties shall inform the Court promptly of any resolution of the arbitration proceedings or any other event that would affect the stay of this matter.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 13.

Dated: October 3, 2023
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**